Judge Floyd and I are happy to have Judge Hudson with us on our first case, which is Bailey v. Essity Professional Hygiene, and if the counsel will come on up, we'll be glad to hear from Ms. Rozelle first. Ms. Rozelle, whenever you're ready. Yes, ma'am, you do. Thank you. Good morning, everyone. I would first like to introduce myself. So, obviously, I'm Erin Rozelle. I represent the appellant plaintiff in this matter, and I come to you from Charlotte, North Carolina. I'm a graduate of North Carolina Central University in Durham, North Carolina, and I'm with the Freeman Law Group in Charlotte, North Carolina. This matter, subject to this appeal, is a civil action arising under Title VII of the Civil Rights Act of 1866. I will refer to these as Title VII in Section 1981. Specifically, my client, Wilkins-Bailey, requested a religious exemption to her employer's mandatory COVID-19 vaccination policy enacted in September 2021 based on her bona fide religious belief against taking the COVID-19 vaccine, and she was denied a religious accommodation by her Further, this employment termination also constituted racial discrimination because Essidy, her employer, applied its mandatory COVID-19 vaccination policy in an arbitrary, discriminatory, and biased manner in violation of Title VII in Section 1981. So, we're fairly familiar with the facts of the case. So, in terms of preserving your time, you may want to just go right into your argument. Yes, sir. So, the issues presented is, did the district court, or should I say, did the district court err in granting Essidy's summary judgment as to her religious discrimination claim under failure to accommodate? That's the first issue. And the second issue is, did the district court also err in granting summary judgment as to her race discrimination claims? Let me ask you this. Is her body as a temple raising, is that an essential part of her religious faith? Yes, her body is as her temple. Yes, Your Honor. To that end, has she taken other vaccines? She has declined all vaccines in her child and adult life except one vaccine that she took, which was Hepatitis A, I believe, because she was exposed to someone's blood at a restaurant. She was contacted by the health department, and they advised that she get that because she was actually poisoned at that point with someone else's blood. Well, doesn't that decision create some discernment on her part as to which vaccine she wants to take and which one she does not? Well, I'm glad that you mentioned that, Your Honor, because that was actually part of our argument in the lower court as well. There is some discernment, and that is part of her religion because her religion is Christianity. And under Christian principles, Christ left the Holy Spirit, which is the discerner of truth. So that is actually part of the Bible, and she absolutely believes that when you are making a decision about your body, under your body is your temple, under those biblical terms. It then applies an analysis process to say, well, what did they mean by that? And so when you're talking about the COVID-19 vaccine, I would submit to you that everybody had to make that determination based on your religion. Because it's not found in the Bible, thou shall not take the COVID-19 vaccine. But what is found in the Bible. So was it a personal decision or a religious decision? It was a decision based on her religion and her interpretation of your body as your temple. So I understand in this case now, Emily did some great lawyering, and there is a statement in there that says, so would you consider this a personal decision, just like the Jehovah Witnesses consider it a personal decision? And my client answered yes. And then she proceeded to explain that her decision is certainly still rooted in her religious basis of what she believed my body is my temple means as it relates to the COVID-19 vaccine. My second question would be, is there some distinction when an individual makes, based on their religious beliefs, a personal decision as to any particular matter? Is that mutually exclusive of a religious principle, or is that an expression of faith? I believe in this situation it was an expression of her faith. And the reason why I say that is because if you look at her deposition, she kept pointing back to the Bible. She kept pointing back to biblical principles. So can you truly say it's a personal decision when you're basing that decision off of your interpretation of a Bible? I believe a personal decision is something separate from your religious faith. If she was explaining it as a personal decision, she would have used I, I, I, I, I think this, I think that, I think that. But what she was doing was saying, well, the Bible says your body is your temple. The Bible says the Holy Spirit will give me discernment. The Bible says that this is poisonous because I'm not protecting my temple. So I believe my client continued to point back to the Bible and Christianity, which did not make this a personal decision for her. I understand that we are prohibited, and I certainly would follow the law, but that particular chapter in Corinthians, that is talking about fornication and nothing else. Well, Your Honor, I think that's your interpretation of the Bible. I said that, I prefaced my remarks, but just so it's out there, that's what she's relying on, is that particular section in the Bible where the body is the temple. But how was she treated differently from other employees who were required to take the vaccine? Your Honor, she was treated different than other people who also used my body is my temple, and those people were, some of those people were actually exempted. So if you want to take us into the race part of this, because we did, that is what leads us into the race part of this. Why don't we try to stick with the religious part? I mean, there may be some overlap, but I think maybe the underlying premise of Judge Floyd's question is, what is the intersection of personal action and religious faith? Because you could have any number of individuals deciding on COVID vaccine or any other medical decision, and they could be people of diverse faiths.  And it would seem to me that each one of them, in making their decision, has to apply the principles of their faith to make that decision. So the personal aspect of it would seem to be part and parcel of the religious decision. And I think if you would try to separate the two as completely different, that would not only be not realistic, but it would be ignoring the discernment aspect of any religious decision, wouldn't it? Your Honor, I want to make sure I understand your question. Could you just repeat the last end of that for me? Well, people are making personal decisions about a vaccine, for instance. You could have any other number of examples of human action. And so they're applying their religious principles to their personal action. So what I'm asking you is a fundamental question. Is that personal application meaning that it is the outgrowth of faith, or are they exclusive of each other? I think they intertwine, Your Honor, because when you are truly religious and you are trying to abide by the Bible, every decision, you're making personal decisions every day. Do I want to curse somebody out? Do I want to drink? Do I want to fornicate? Those are all decisions we're making, but the mental analysis is, am I honoring the Bible with this personal decision? And so I believe what matters in these cases is you're pointing to a religious principle. You're not just pulling something out the air. You're saying, hey, this is it right here, and this is my interpretation of that. And in my client's case, through the Holy Spirit, with that discerning process that the Bible says we all have as Christians. And she made that decision based off of that process. And everybody, no matter what religion, COVID-19 shook this world, Your Honor. Everybody under any religion had to make decisions. And again, COVID-19 didn't exist back when these principles were created, these religious principles. So everybody had to do an analysis. It turned into a personal decision for everybody, but was that personal decision rooted in a religion? Maybe for some, and maybe for not. There could be other people that it was a personal decision based off of how they feel about science. Well, we have a four-part test, and I think the two sides agree that you meet three of the four parts. The contested part seems to be, and I'll just read it so I don't make a mistake. Number four, different treatment from similarly situated employees outside the protected class. And the issue, I guess, is do you meet that particular requirement? Okay, so that takes us to the race, and we can go there. No. Is that what you're asking me, Your Honor, the race discrimination? It doesn't matter what it was, race. Largely, we'll have the fourth prong. So with the analysis under the prima facie case for the religious accommodation claim, the first prong is he or she has a bona fide religious belief that conflicts with an employment requirement. Number two, he or she informed the employer of this belief. Let's see if we can kind of cut to the chase here. The district court did not doubt her sincerity.  It only came in at the end of the discussion, as Judge Floyd has indicated. Okay. So what you need to do is tell us what exactly the district court did that was error. Well, the district court did find that her belief was sincere, but they said it was not religious in nature, and that is where I'm saying the error came. And because of that, they said that she did not meet prong one of the prima facie case, which is that she has a bona fide religious belief that conflicts with an employment requirement. So the law here, as I presented in my brief, is that a belief is an essential part of a religious faith must be given great weight. So the claim of my client that her belief is an essential part of her religious faith must be given great weight. That was under the Barnett case that the Fourth Circuit decided. So I'm saying that the district court did not give great weight to her claim that this decision was truly based in her religion, Your Honor. That is what I'm arguing. So the district court was supposed to actually, as far as the religious in nature, this court has said in Barnett, that that limits the fact finder's inquiry to the determination whether the beliefs professed are in the claimant's own scheme of things religious. And then it further gets into the part where I just said that the claim of the inherent must be given great weight. I believe the district court went into an analysis of the weight of it, the credibility of what she was saying, instead of the fact that there was, in fact, evidence presented where a jury, a fact finder, could find in her favor that this was religiously based. There were plenty of issues. There's issues. This is here on summary judgment. Yes, it is. And we are saying that there were plenty of issues that a jury, a fact finder, could have found in our favor. And we are also claiming that the district court judge, he did not just look at this case and say, okay, well, you have issues over here. We have issues over here. This needs to go to a jury. He actually weighed the credibility of each of our stories, per se, because we both have a story to tell, and he determined that their story was more credible. He went into what I believe is the preponderance of evidence standard, which is that you convinced me more that this wasn't based on her religion than she convinced me. The summary judgment is it limits the district court to is there meat to what you're saying? That is what summary judgment is. And to be honest with you, I started really thinking about this yesterday because I did a lot of criminal law until I got myself tied up into this case. And in criminal law, we also have a process called probable cause hearings to make sure that people aren't just taking out frivolous claims and criminal charges against someone. Summary judgment does the exact same thing on the civil side. So anybody can file a lawsuit. You go get yourself a lawyer. You pay them some money. You file a lawsuit. But summary judgment is saying, does this lawsuit have meat? Is this frivolous? Did they just make this up? Or are there really issues here? There's a ton of issues in this case. So much, in fact, they had to actually ask for a page extension for our briefs for summary judgment to argue all the issues. They had to give us an extension, Your Honor. There's plenty of issues. And I actually laid them all out in my reply brief. I did a nice little chart for everyone so you can see. This is what we're saying. This is what they're saying. There are a ton of issues. This should go to a jury. That is our argument, Your Honor. All right. Thank you very much. You've got some rebuttal time. We'll now hear from Ms. DeSmit. Thank you. May I please the court? My name is Emily DeSmit. I am from Morgan Lewis, and I'm here on behalf of Essity. To start with the religious failure to accommodate claim, we respectfully request that the court affirm the district court's grant of summary judgment on Ms. Wilkins-Bailey's failure to accommodate claim because Title VII requires employers to accommodate the religious beliefs or practices of individuals. It does not require employers to accommodate all of the personal decisions of individuals who identify as religious. The district court correctly concluded based on- Isn't that a fact question? No, Your Honor. Well, if Your Honor's question is, is it a question of fact as to whether Ms. Wilkins-Bailey's decision not to get vaccinated was personal, it is not because her own sworn testimony was that she made a personal decision about whether to get vaccinated. Well, if it's a personal decision, does that exclude a religious motivation? It does not, but there needs to be a connection between the religious belief and the decision not to get vaccinated. There has to be a connection with the religious belief, so this circuit- She says her body is her temple and her faith doesn't permit her to take this particular vaccine. Why not enough? It might be enough, but that's not what she said in this case, Your Honor. It kind of depends on what you read where. Well, in this case, the plaintiff was given the opportunity throughout discovery to identify what her religious beliefs were that prohibited her from getting vaccinated. When she submitted her accommodation request to Essity, she identified the use of fetal cells- What she identified as fetal cells are the use of experimental tech in the vaccines. Well, after that, I thought she had abandoned that already. She did, and that's my point, Your Honor. When she was asked about that in discovery, she said that belief did not- I don't have a belief about fetal cells or experimental tech that precludes me from getting vaccinated. She was asked- she attached a pamphlet from the Nation of Islam about being skeptical of vaccination. She said that's not why. She was asked, do your religious beliefs prohibit you from getting vaccinated? And she said, no, I make a personal decision about whether to get vaccinated. My religious beliefs don't prohibit me from getting vaccinated. They don't require me from getting vaccinated. I make a personal decision about whether to get vaccinated. My religious beliefs don't require- And where would you say we will find that statement in the joint appendix? Sure. There are multiple statements in the joint appendix, Your Honor. So, for example, she was asked about- she had attached a pamphlet from Jehovah's Witnesses who do not preclude- or who do not object to COVID-19 vaccination. And she was asked, Jehovah's Witnesses say that it's a personal choice whether or not to get vaccinated. Is that your belief as well? And she said, absolutely. She was asked- and that is that joint appendix, page 321. She was asked- It kind of takes us back to the question we had with opposing counsel. Are you indicating that when someone applies religious principles or religious faith and makes their decision, which is a personal decision, that those two things are mutually exclusive? In some instances, if the individual, the employee, explains what the connection is between their religious belief and their objection to the employer's policy, in this case, vaccination, there would be a connection that it would satisfy the standard under Title VII. Title VII- But if the employee disclaims any connection and says, no, I don't have any religious beliefs that prevent me from getting vaccinated, my decision not to get vaccinated is a personal one. She says her body is her temple and that prohibits her from taking a vaccine. Why isn't that enough at this stage? Why wouldn't it be a decision the jury would make as to whether or not they assess that to be a credible statement? To allow her to go to a jury on this, we would have to disregard her admission during discovery that her decision is personal. She did not say, I believe my body is a temple and, therefore, I can't get vaccinated because I believe that the vaccine would harm my temple. She said, I don't even know what is in the vaccine. I didn't even look. I never considered getting vaccinated. And if you look at her testimony holistically, she was given the opportunity to explain the connection, and, again, she said that, in fact, her decision was personal. She said her religious objections extended to all vaccines. She said that she doesn't take any vaccines. She's never taken any vaccines since she was a child, but she did not connect that to her religious belief. Let me see if I can focus that just a second. I guess the question is the nexus in this case. Did she concede that her religious belief does not prohibit her from receiving the vaccine, but rather leaves it to her individual discernment, which she also describes as a personal decision? Is that a fair assessment of the record in this case? That is exactly right. And if you look at the Fourth Circuit case law on this issue, in Finn, the most recent case in which the Fourth Circuit considered objections to COVID-19 vaccination, the court said an individual to bring a failure to accommodate claim must identify a religious belief and connect that religious belief to the objection to vaccination. Barnett says the same thing. Again, that is religious belief not to take any vaccine. It may not be. It may be. It's up to—we're not questioning the plaintiff's beliefs. And in both Finn and Barnett, they were at the motion to dismiss stage, so all we had was the pleadings. In those cases, the individuals, the employees, had said, you know, it's my belief that I would sin if I took the COVID-19 vaccine. One of the employees said, you know, I have an objection to the use of vaccines that are tested on fetal cells, and it would be against my religion to take that vaccine. There is a religious—an articulation of a religious belief in each of those instances and a connection to the objection to vaccination. What we have here is a plaintiff who was asked a lot of questions about her religious beliefs and what about those religious beliefs impeded her from getting the COVID-19 vaccine, and she repeatedly said that her belief was, in fact, personal. And the Dockman v. Shahala case, which is a Fourth Circuit case from— Well, if the belief is personal, your argument seems to center on that if the belief is personal and involves some sort of discernment from religious principles on behalf of an individual's part, that that takes it outside of the realm of a religious decision. If the discernment is merely personal discernment and is not God telling you how to make, you know, what to decide, then yes, it would be a personal decision. And that would be a limitless— That would probably contradict quite a bit of theological viewpoint today. Well, again, going back to the Dockman v. Shahala case and the Fourth Circuit case, that is a good case to illustrate the distinction. I mean, isn't free will a basic principle and that there's a decision-making process that people go through under the Christian faith, among others, and that they have a discernment based on their faith as to what actions to take, which would quintessentially seem to be a personal decision? Well, Ty— I mean, your argument almost seems at times to go to if it's not written verbatim in a catechism or a denomination statement of faith, it can't be a religious principle. That is definitely not what we're seeking to argue. We asked—we're not questioning or requiring or arguing that Ms. Wilkins-Bailey identify a particular religion that her— a specific religion that her objection is based in. The question is, does she have a religious belief that is guiding her objection? And she testified, and we don't doubt, that her religious beliefs are rooted in a combination of religions— Jehovah's Witness, Christianity, Islam. That's how she's raised. We're not saying you don't have a religious objection to vaccination because your beliefs are rooted in three different religions. What we are arguing is that there is no evidence in the record. In fact, she has—it's her testimony. We're not before you saying we disagree with what she testified. It is her testimony. It was her obligation to identify during discovery the connection between her religious belief and her objection, and she did not do that. She said, no, this is a personal decision. And the reason I keep trying to discuss the Dockman v. Shahala case is because it illustrates that important distinction. In that case, an individual had an accommodation to leave work for the Sabbath two hours early. She was provided that accommodation, and her employer did not doubt that she needed it. But she also had requested additional time to leave even earlier so she could prepare for the dinner and do a lot of additional preparation. And the court held in that case that it is only the religious beliefs, it is not the personal preferences that are not core to the religious beliefs that require accommodation. And that is what the court just held in Finn. It cited back to that same case and said it is only the religious beliefs of individuals that require accommodation. And as the Dockman v. Shahala case shows, a person can be religious, but not all of their religious beliefs are going to qualify for accommodation. I keep trying to tie you down to this point. In 2025, this court issued Finn v. Humane Society. This was on a motion to dismiss, though. A person's beliefs must be an essential part of a religious faith, and two, such beliefs must be plausibly connected with her refusal to receive the vaccine. Now, we're at summary judgment. All we've got to do is take out the word plausibly and read it this way and ask whether there's a genuine dispute or material fact as to the nexus between the plaintiff's belief, that is, the body is the temple, and her refusal to take the COVID-19. Do you agree that that's the test we should use? That is the test, Your Honor. And I'm going back to the follow-up. Did she say her religion prohibits her from taking that? She did not. She said exactly the opposite. She was asked that question, and she said, and I quote, she was asked, none of your religious beliefs require you to object to vaccination. And she said, nor does it require me to accept it. It's up to each individual to make that decision. She said, and that is at the joint appendix 320 to 321. She talks about discernment, but she talks about making a personal decision. Again, she doesn't, and all of the beliefs that she, or the two beliefs that she identified in her accommodation request, she disclaimed as reasons for objecting to the vaccination. So again, and the district court cited to some of this testimony, but there is a lot of it. And so we would have to disregard her testimony to allow her to go to a jury, and that would create a blanket, limitless privilege for anybody who is religious to entitlement to an accommodation for all of their personal beliefs. That is why that would eliminate the second part of the test, which requires the employee to connect a religious belief with the objection. They have to do that. They have to identify evidence in the record to connect the religious belief to the objection. Otherwise, we are just granting anybody who identifies as religious a blanket privilege to dictate their own standards of conduct, significantly burdening the employers unless they can establish a burden, bear their burden of proving it's an undue hardship. And the Supreme Court in Wisconsin v. Yoder said the very concept of ordered liberty precludes that, precludes allowing people to dictate their own standards of conduct. This is why we have a requirement that individuals identify the specific religious belief that prohibits them from complying with the employer's policy and connect the policy to the belief. And that is consistent with all this precedent. At first we thought Wisconsin v. Yoder was dead and buried until the Mahmood case came up. But, Your Honor, it's been cited in many Title VII cases for this very principle because we have had many cases on these particular issues, and really the burden is not that great. Well, in Yoder, that was Amish folks, so there's a pretty clear distinction, well known through history and time, of their faith. This is a more, makes it a more difficult case here because this is so individualized compared to what you would have had in Yoder. In some ways, but in other ways, because the standard for sincerity is actually pretty light, right? We leave it to the individual to explain their beliefs, right? Again, I'm not here to... It's not uncontested here that her beliefs, whatever they may be, are sincerely held. Precisely, precisely. But her requirement, her obligation is merely to identify a connection and to identify religious beliefs that preclude vaccination and not just rely on her personal beliefs. If I may, Your Honors, I would like to just touch briefly on the race discrimination claim as well. That claim should be affirmed because, or the summary judgment on that claim should be affirmed because there is no evidence in the record that Ms. Wilkins-Bailey was treated differently or discriminated against based on her race. There is no direct evidence of discrimination in the record. There is a sworn statement from Fred Albrecht, who was the former director of human resources at Essity, who assessed all of the accommodation requests that employees submitted and said, we did not consider race, we did not discuss race. He was not deposed in this case. There is no evidence that is conflicting with that sworn statement. They did not, the company did not consider anybody's race in assessing Ms. Wilkins-Bailey's accommodation request. Because there is no direct evidence of discrimination, she has relied on the McDonnell-Douglas burden shifting framework, seeking to establish a prima facie case of race discrimination by identifying similarly situated individuals who were treated differently than her. She has failed to identify any individuals who are actually similarly situated to her in the relevant respects in this case. There are two real potential decisions that she seems to allege are discriminatory. One was the decision to terminate her employment after her accommodation request was denied and she still refused to get vaccinated. She has not identified a single person who was allowed to continue to work at the company after December 31st, 2021, despite refusing to get a COVID-19 vaccine and being denied an accommodation. On that particular piece, she has no evidence that she was treated differently than anybody based on her race. She identifies a purported comparator, Margaret Helborn, who was a friend of hers, a white employee who had some material differences and the circumstances of her separation from the company were different, but she never requested an accommodation. And just like Ms. Wilkins-Bailey, she was required to leave the company on December 31st, 2021. Well, it's a dispute between the two of you over this comparator argument. As I understand the rule, and you can correct me if I'm wrong, when we're talking about the comparator analysis, the plaintiff must provide that evidence and the comparator must not be similar in some respects, but in all respects. Is that the difference you have in this case? That is correct, Your Honor. Ms. Wilkins-Bailey has identified two potential comparators. Margaret Helborn is not a comparator on the accommodation decision or the termination of Ms. Wilkins-Bailey's employment because she's not similarly situated. She didn't even request an accommodation request and she voluntarily retired and she was not treated differently than Ms. Wilkins-Bailey because she separated from the company at the same time. She's also identified a handful of white employees whose accommodation requests were granted, but each one of those requests are completely distinct from Ms. Wilkins-Bailey's. And we've gone through them in our brief. We don't purport to say the basis of each of those decisions, but each of those requests were completely distinct from Ms. Wilkins-Bailey's. And when you look at the fetal cell objections, for example, they identify a clear connection between the fetal cell objection and the COVID-19 vaccine, and so they are not proper comparators either. So Ms. Wilkins-Bailey hasn't identified anybody who is actually similarly situated to her in all respects, let alone even the key respects, and because of that, she doesn't have any evidence that would support the fourth prong of her prima facie case. And so a summary judgment on her race discrimination claim should be affirmed. All right. Thank you very much. Thank you. All right. Ms. Rozelle, you've got some rebuttal time. Where I'd like for you to start is to give us your best citation to the record that connects your client's religious faith to her vaccine decision. Absolutely, Your Honor. I was actually prepared to do that. It can be found in JA 355 through 356 in JA 567, and I would like to read it out to the court. And where are you now? What page are you on? I'm on – this can be found on JA 355, Joint Appendix 355 through 356 in JA 567. All right. And you said you were going to read something. Some of it, Your Honor. So what I'm asking is where are you starting? I am starting at JA 355. Okay. All right. Well, have at it.  So Emily asks, and you said in my home we spiritually interpret and take scriptures. Counsel, just as a hint for your next argument, it would probably be more appropriate to refer to opposing counsel as opposing counsel instead of by first names. Okay. I'm sorry. Opposing counsel asks, and you said in my home we spiritually interpret and take scriptures from the Bible very seriously. For example, you quoted 1 Corinthians 6, 19 through 20. Or do you not know that your body is a temple of the Holy Spirit within you whom you have from God? You are not your own, for you were brought with a price, so glorify God in your body. She said, okay, my client. Question from opposing counsel. I'm asking, what is the relevance of that passage to your decision not to get vaccinated? Answer by the plaintiff. Oh, to be mindful of what you have put in your body and that the Creator gave you your body and it is a temple. Discern within yourself what you put into your body because God gave it to you. That's what that means to me. You are not your own, for you were bought. So dying on the cross for me, my mind, my body, my heart, my soul, my mindful. Be mindful of what you put in your body. I'm trying not to get emotional. I am. But this is all mine in the good Lord's. We all, in my mind, belong to the Creator, good, bad or indifferent. It is up for us to be mindful, to appreciate and value and have discernment about what we put into our body. Yes, ma'am. Question by opposing counsel. But this passage, it doesn't prohibit you from putting all medications into your body, correct? Because you have taken some medication.  The operative word for me is discernment. So, yes, it is for me. Answer. Then she further answers. It says, I'm starting. Let me get back here. Or do you not have that your body is a temple of the Holy Spirit within you? The Holy Spirit, that's discernment to me. I don't know how else to make that plainer. But when my spirit tells me to move and to act, I'm humbled to do that. That was her answer of connecting what I identified to you all in my opening as her discernment with the Holy Spirit. And I would like to point out that Emily actually just admitted when she was up here. I'm sorry. Opposing counsel. She said, when you were asking her the difference between a personal decision and a religious decision, she said, well, she would need to say that if God doesn't tell you to do it, she connected this discernment process with God telling her to act versus her just acting on her own. And so that was actually just said, Your Honor. So I believe opposing counsel is she is recognizing that there is a discernment process. There is a process as humans, a connection that we have to God, our creator, that he speaks through us. He speaks to us and he tells us when to act. And in Christian faith, that is specifically identified as the Holy Spirit guiding you into all truth. So, Your Honor, I would like to touch on the race because I only have about a two and a half minutes left, unless you have any other questions about that passage. OK, as far as the race, we have plenty of evidence on race, Your Honor. There were two comparators that were identified. And I would like to say that this whole notion of the comparators, they need to be similarly situated. They need to be close in comparison. That essentially, because every case is different, it depends on the allegations in the case. We have alleged in this case that the employer, Estedy, they applied their mandatory COVID-19 vaccine in a discriminatory way. That is the allegation. There was an application of this policy was rolled down and they did not do it fairly. That is the allegation. So, we submit to this court that that means the comparators are people who did not abide by that vaccination policy. Everybody should have been treated the same. That policy stated that if you were not vaccinated by November 30th, that you would be put on unpaid leave and that your employment would be terminated on December 31st. That is not what happened to our client. She was terminated on December 6th. In comparison, Margaret, who also elected not to take the vaccine, Margaret was allowed to stay until December 31st. Margaret was allowed to, Ms. Hilborn was allowed to stay as an independent contractor, even though there was policy in place that said that everyone had to be vaccinated. So, we do submit to this court that anyone who didn't take the vaccine, that activated the policy, that is not what happened to our client. And everybody should have been treated the same, but that is not what happened. We have people who were not treated the same. So, yes, we are saying Margaret Hilborn is a valid comparator. Also, the other comparators are the other folks who asked for exemptions, who were granted exemptions, seven of which are white. We pointed out those letters and those letters looked just like our clients. Now, of course, they are arguing they did not, the other side opposing counsel. And I have put a summary together in my reply brief that shows, again, there's a ton of issues as it relates to that as well. So, we still believe that the district court erred in granting summary judgment because we identified people who said the same thing, my body is my temple, who stated that they were against the science in it, and those people were granted exemptions, and they're white, and my client is black. All right. Thank you very much, Ms. Roselle. We appreciate the argument of both counsel. So, we're going to come down and greet counsel, and then we're going to take a brief recess.
judges: G. Steven Agee, Henry F. Floyd, Henry E. Hudson